Matthias, J.
 

 This action which was instituted in Miami county involves the construction of the will of Daniel Drake, for the purpose of determining the character of the title to certain lands devised by that will. The portions of the will and codicil essential
 
 *536
 
 to a consideration of the question presented are as follows:
 

 Item I of the will: “I give and devise to my beloved wife Susan Drake, the eighty (80) acres of land on which we now reside * * # for and during her natural life
 
 *
 
 * *. At the death of my said wife, I give and devise said eighty (80) acres of land to my son Thomas L. Drake, in fee simple # # # ??
 

 Item II of the will: “I give and devise to my son, Thomas L. Drake, fifty and 91/100 acres off the south side of the farm on which I now reside, * * * he however in consideration of this devise shall pay to my Executors, in three equal payments, in three years after my death, with three per cent interest thereon, the sum of Twenty-four Hundred and Fifty dollars * * * .”
 

 Item I of the codicil: “I hereby change and amend item No. I in my said original will, so that the devise to my wife of the said eighty (80) acres of land therein mentioned shall be changed to sixty-five (65) acres and that at the death of my said wife said sixty-five (65) acres of the said 80 acres, originally devised to my wife is hereby devised to my son Thomas L. Drake, instead of the eighty (80) acres therein mentioned and devised.”
 

 Item II of the codicil: “I hereby change and amend item II of my said will so that the devise of land therein described, to my son, Thomas L. Drake, shall be sixty-five (65) acres, instead of fifty and 91/ 100 (50 91/100) acres, as therein mentioned, and the eighty (80) acres therein mentioned as devised to my wife, with remainder to my said son, Thomas L. Drake, is hereby changed to seventy-four and %
 
 *537
 
 (74%) acres, and the amount provided in said item, which my son is to pay, is changed from $2,450.00 to five hundred dollars ($500.00).”
 

 Item VII of the codicil: “I further will and devise that my son Thomas L. Drake in consideration of the devise to him at the death of my wife shall pay to my estate the sum of forty-one hundred and twenty-five dollars ($4,125.00), in four equal annual payments, commencing one year after the death of my wife, without interest.”
 

 In like terms the testator devised to his sons John C. Drake, George H. Drake, and Theodore A. Drake certain described parcels of land with similar requirements of payments to the executors.
 

 Thomas L. Drake, the devisee named in said will, died November 7, 1897, without issue, leaving Jennie Drake his widow, and as such widow she went into possession of the real estate devised to Thomas L. Drake. She died May 16, 1927, leaving a will whereby she devised said real estate to her relatives, the plaintiffs in this action.
 

 By the undisputed testimony in the record the value of the land devised to Thomas L. Drake was $13,925. The total amount of payments required to be made by him was $4,625.
 

 The sole question presented is whether the title conferred upon Thomas L. Drake under the terms of his father’s will was ancestral or nonancestral. If the former, then under the statute, upon the death of Thomas L. Drake, the title passed to the heirs of the ancestor Daniel Drake, subject to the life estate of Jennie Drake; if the latter, then upon the death of Thomas L. Drake title passed in fee simple to his widow Jennie Drake, and thence, by
 
 *538
 
 her will, to her named devisees. If the title came to Thomas L. Drake by purchase, the disposition thereof upon his death is controlled entirely by the provisions of Section 8574, General Code. If it came by devise, then under the terms of Section 8573, General Code, the estate would vest in the widow during her life, and at her death in the brothers and sisters of the intestate, etc.
 

 Hence, our only question is whether the title to said real estate came to Thomas L. Drake by devise or by purchase.
 

 In this instance the record clearly discloses that the value of the property devised was far in excess of the amount the devisee was directed to pay into a fund to be used by the executor to discharge other legacies. Oúr conclusion, however, as to the ancestral character of the title of the intestate to the land in question, does not rest upon the facts peculiar to this ease; it rests upon the broader ground that, when title to real estate comes by will from an ancestor to a devisee named, such title is ancestral in character, even though a charge be made against it by the terms of the will, or some payment be required to be made by the devisee.
 

 By the terms of this will the real estate in question is devised to the son. True the devisee is required to pay certain named sums which are to be used to discharge legacies bequeathed to others. Nevertheless it is a devise of land subject to certain payments required to be made, and its character is in no wise changed or affected by the phrase, “in consideration of the devise.” The title came to the intestate by devise. He has no title except that which came to him by and under the terms of his
 
 *539
 
 father’s will. The legal title to real property determines the course of its descent. That proposition is conclusively established in this state in
 
 Russell
 
 v.
 
 Bruer,
 
 64 Ohio St., 1, 59 N. E., 740, and other cases there cited.
 

 The theory that the word “devise” as used in the statute means only and is limited to gratuitous devise, or unconditional devise, finds no support in the Ohio cases. The discussion of the statutes of descent and distribution by Hitchcock, J., in
 
 Brewster
 
 v.
 
 Benedict,
 
 14 Ohio, 368, is interesting and instructive. Referring to this statute he said, at page 385 of 14 Ohio: “In this act, relative to descents and the distribution of personal estates, the legislature seem to have divided the property of which a man might die seized into two classes or two divisions, to wit, such as came to him in the regular course of descent, including such as may have been devised to him, or which may have been conveyed to him by deed of gift, but which he would have inherited had there been no such devise or deed of gift, and such as he may have acquired by his own industry, or by the devise or deed of gift from a person to [from] whom he could not have inherited in the regular line, either lineal or collateral. In the first class of cases, the blood of the person from whom the estate came is to be regarded in the distribution; in the last, the blood of the intestate. That such was the intention, it seems to us there can be no doubt.”
 

 It seems quite apparent that it did not occur to that very able jurist when considering and discussing the comparatively new statute that the word “devise” was therein used in a limited or restricted sense, or as applying to any particular kind of devise.
 

 
 *540
 
 The decision of this court in the case of
 
 Case v. Hall, Admr., 52
 
 Ohio St., 24, 38 N. E., 618, 25 L. R. A., 766, while not directly decisive of the question presented here, is instructive. In the case of
 
 Raymond
 
 v.
 
 Butts,
 
 84 Ohio St., 51, 95 N. E., 387, it was held that title acquired under a will wherein a devise is made subject to certain conditions comes by devise, and not by purchase, and the real estate descends as ancestral property.
 

 In the subsequent case of
 
 Hostetler
 
 v.
 
 Peters,
 
 94 Ohio St., 17, 113 N. E., 656, where a devise subject to the payment of legacies was involved, but the particular question presented was whether the testatrix, who was an aunt of the devisee, was an “ancestor” of her niece, this court answered the question in the affirmative, and thereby held that the title of the niece, although charged with a legacy, came to her, not by purchase, but by devise, and was therefore ancestral in character.
 

 Decisions in other jurisdictions pertinent to the issues here presented support our conclusion. Those in point are as follows:
 
 Kinney
 
 v.
 
 Glasgow,
 
 53 Pa., 141;
 
 Banes
 
 v.
 
 Finney,
 
 209 Pa. St., 191, 58 A., 136;
 
 West v. Williams,
 
 15 Ark., 682.
 

 These cases are not only cited, but are discussed in the opinion of Jones, J., in the case of
 
 Wheatcraft
 
 v.
 
 Hall,
 
 106 Ohio St., 21, 138 N. E., 368, and a repetition thereof is deemed unnecessary. However, the cases cited are of value only so far as they assist in ascertaining the purport, meaning, and effect of the term “devise” as used in the statute to which we have above referred. This statutory provision has been in existence nearly 125 years, and it does not appear that until within recent years there has
 
 *541
 
 been any question raised, at least none reaching the court of last resort, as to its meaning and effect, nor any claim asserted that a charge imposed upon lands, the title to which was transferred by the will of an ancestor, would have the effect of converting the title of the devisee from ancestral to non-ancestral, and thus change the line of descent in the event such devisee thereafter die intestate. It is impossible to estimate the difficulty that would arise if that contention were upheld. If the charge imposed or the requirement made by the terms of the will be slight in comparison with the value of the property devised, it would certainly be absurd to hold that the title of the devisee came to him by purchase. Yet it would be far more in the interest of the stability and certainty of titles to apply the rule, which has been strongly urged, that upon the payment of any sum pursuant to the condition imposed by the devise the title of the devisee is rendered non-ancestral, than to attempt to ascertain and determine in each case whether the condition imposed or payment required was such as to warrant the conclusion that the property came by purchase, and, therefore, that the title was nonancestral in character. The question of the relation of the amount of the charge or required payment or other condition named to the value of the property can scarcely be raised until after failure of issue of the intestate, as was well pointed out in the
 
 Wheatcraft case, supra,
 
 and therefore, during all that period of time the character of the title, whether ancestral or nonancestral, would be in doubt, and the uncertainty would continue until set at rest by a decree of court. The importance of a definite and permanent statement of the law cover
 
 *542
 
 ing the subject is apparent, for the instances are very numerous where wills have been executed with terms and provisions similar to those in the will involved in this case.
 

 This will was made in 1883, and the codicil in 1886. Forty-three years later the contention is made that “give and devise” is to be construed “bargain and sell” because of the condition therein contained that some payment be made by the devisee to facilitate the division and distribution of the testator’s estate.
 

 The character of the title to real estate coming to a devisee by will is clearly and definitely fixed by the express and explicit terms of the statute. It is there made ancestral whether the devise through which it came be conditional or unconditional. The payment required reduces the value of the gratuity, but it does not alter the character of the title. That was impressed by legislative enactment.
 

 We are asked now by judicial construction to amend such provision of the statute so that it will read “unconditional devise,” or “gratuitous devise,” or “devise with no charge or requirement imposed thereon,” or “devise without consideration.” That would be quite a different provision and would of course require the conclusion, if indeed there could be any issue presented upon the subject, that the title of the intestate in this case was nonancestral. Such amendment, however, falls within the province of the legislative, and not the judicial, branch of the government.
 

 Our conclusion is that, where real estate is devised to the son of the testator, the estate thereby acquired is ancestral, regardless of a charge made thereon, or a requirement that the devisee make cer
 
 *543
 
 tain designated payments to others. Snch requirement does not convert the estate into one of purchase and cause it to descend under the terms and provisions of Section 8574, General Code. Hence the title of Thomas L. Drake to the real estate in question came to him hy and through the will of his father; it came by devise from an ancestor. The provision in the will, “I give and devise to my son, Thomas L. Drake,” constituted the “devise” whereby the title to said real estate came to the intestate Thomas L. Drake, and when he died intestate seized of that real estate the descent thereof was necessarily controlled by the provisions of Section 8573, General Code.
 

 It follows that the judgment of the Court of Appeals in this case is reversed, and judgment is here entered for plaintiffs in error.
 

 Judgment reversed and judgment for plaintiffs in error.
 

 Jones and Day, JJ., concur.
 

 Kinkade, J., concurs in the judgment.